the 11th circuit. Okay, I think you're all familiar with our lighting system, but just a quick review. When the light turns yellow, you have two minutes left. When the light turns red, your time is up and we ask that you please respect the timer. If we have asked you a question and it takes you over the red light, then go ahead, just answer the question we're asking because we want to hear the answer. But other than that, we do ask that you please stick to the time limits. All righty, we're going to start today with a case of United States of America versus Pulido and Jimenez and we'll hear first from Ms. Daines. Good morning, your honors. Counsel, may it please the court. My name is Laura Daines. I'm here on behalf of the defendant, Jordan Pulido. I'd like to focus on the fourth amendment question in this case, which is at what point is a border search of electronic devices complete? Relatedly, can the government rely on the border search exception to search electronic devices to investigate past crimes, even if intercepting evidence of those crimes will not prevent the entry of unwanted persons or things into this country or assist in the collection of duties? Is there no fourth amendment protection at all at the border for electronic devices, information accessible on those devices, as the government argues? Is there instead some limit to the scope of a search at the border? And is your analysis also going to include the fact that your client was a wanted man? I think the analysis includes the fact that he was being investigated for offenses, if that's what you mean by wanted man. And I think that when you're not dealing with the border search exception, and we contend that the reading of his text messages and emails was no longer part of a border search, that the border search had been completed, you're subject to the general fourth amendment warrant requirement or some other exception to the warrant requirement. But the border search has to be tied to the justifications for the border search. Once those justifications are met, then the border search is complete. What do we do with TwoSet? TwoSet I think does not answer the question of scope. So TwoSet and Vergara both answer the question of what level of suspicion is needed for a search of electronic devices. It does not address scope at all. And if you look at TwoSet, it's very tied to the historical justifications of the border search exception. The court extensively discusses that child pornography is contraband and then uses other examples tied to the historical justifications, such as intercepting narcotics, collecting duties. And the court explains that it doesn't want to hamper law enforcement when searching for contraband, specifically child pornography, in the place that it is most frequently found. But Judge Rosenbaum is right that there's language in TwoSet that extends more broadly, right? I mean, the quote that I wrote in my notes is that the fourth amendment quote does not require any suspicion for forensic searches of electronic devices at the border. That sounds pretty categorical, right? It does, but I think that has to be taken in the context of the whole decision, which is about a search for contraband. And both TwoSet and Vergara are searches for contraband and repeatedly go back to this historical justification of searches for contraband. So it just does not address this question of scope, which I think is a fairly standard question in all kinds of Fourth Amendment contexts. And I think an interesting thing in TwoSet is it does discuss the Fourth Circuit's decision in Pulseuse, which has two primary questions that are discussed in that case. The first one being the scope, and the Fourth Circuit found that there did have to be some kind of nexus between the justifications for the border search exception and the scope of a search. And then it addressed the second question of what level of suspicion is needed for a search of electronic devices. And TwoSet only addresses that second question. Obviously, the court was aware of Pulseuse, since it cited that case, and just chose not to address the scope question, because it wasn't at issue in that case, which I think is what the magistrate judge found here was. Can I ask you a quick question? So I think I understand sort of conceptually what you mean when you refer to the scope question. When does initiation bleed into scope? Where along the line do you think the Vergara-TwoSet principle drops off and some other Fourth Amendment principle picks up? So I think that... I mean, you know, I don't, like, so a forensic search within the meaning of TwoSet, is that just like opening the phone and looking at whatever happens to be on the lock screen or something, or is it more than that? At what point do we get into scope? Yeah, I think scope has to do with the places and sort of depth that you're looking at, and I don't know that you when the Vergara and TwoSet principle ends in your mind. I think they end when you're looking in places where you can't find anything related to the justifications for the border search. So the Supreme Court has told us that the border search is historically justified to keep unwanted people and things out of the country. Examples including communicable diseases, narcotics, explosives. So all of these are things that you can look for, and obviously we're in a sort of different context with electronic devices, but you can still find evidence, for example, of contraband, of child pornography, and perhaps you can find some messages dealing with imports, but at a certain point when you're looking at messages that are two years old and are just day-to-day communications between people, you're not looking for a place in a place where you're going to find... See, I don't think I quite understand that. I mean, how are you going to know whether your search is sort of for contraband until you're looking at the message? Well, I think contraband is an easier question because there's limited types of contraband that you're going to find on a cell phone, which I think most of the cases in this arena deal with, is you're probably looking at and you're not going to find... But it could be messages about drugs or something, right, or human trafficking or something like that. Right, right. So it just seems like there are all kinds of reasons that Bergara and Toussaint would say to law enforcement officers, you can look at the messages, but now that they're looking at the messages, it doesn't like suddenly become an unreasonable search, does it, simply because the message doesn't reach one of those topics? You see the difficulty? Yes, I think it is a very difficult line to draw. And I think that, you know, in this case specifically, we're dealing with messages that were quite old and that related to past crimes and you're dealing with something different. So the Supreme Court has explained that there's a general difficulty with any kind of execution of a search of papers, things that have to be read because you're not going to know if it's relevant to the search until you read it. But they've also explained that there's a difference between a cursory glance to look and see if this is responsive to what you're looking for and, you know, a complete reading of something. Just to pick up on Judge Newsom's question, since we are bound by Toussaint and we don't have a choice about that, if you had to state a bright line rule as to where where the rule in Toussaint ends and the rule you're advocating for begins, what would that, how would you phrase that? So I don't think it's a question of beginning and ending. I think that you can do a forensic search without any level of suspicion and then a different rule applies to a search for what. And I think the Ninth Circuit in Kano divides these two questions and the court could do something very similar here without infringing or receding from or limiting Toussaint in any way. It says you can do a forensic search but the search is limited to these historical justifications for the border search. And you might be able to do a cursory glance at messages which is different from what occurred here, which was reading, processing, taking notes on the messages. And if you do a cursory glance and you see what's going on, then don't you have another problem? I mean, well there was nothing sort of on its face illegal or contraband about these messages. I think, you know, to emphasize a little suggestive, right? I mean, I've been a naughty girl or whatever. I mean, yeah, in which case law enforcement could obtain a warrant just as they are generally required to for investigative purposes for the Fourth Amendment. And I don't think the Fourth Amendment goes away at the border. There has to be some limit somewhere. Well, I mean, I think you're right. But we do have Toussaint to contend with. And so I understand, I think I understand what you're saying. But I think that in practice, you know, it's one thing to say these are two different concepts. It's a different thing when you try to apply that. And that's where I think there might be a problem. So I want to just give you one more chance to see if there's a clear way we can separate those. Yeah, I think that the question for Toussaint is you can look, you can do this forensic search, but you have to be searching for contraband, evidence of contraband, something that has to do with duties. You can't just do a wholesale reading of irrelevant messages and then copy them and put them in investigative reports. And I see I'm at my time because allowing the search of Mr. Polito's devices in this case was an unjustified expansion of the border search exception. I ask that the court hold that the evidence must be suppressed, vacate Mr. Polito's convictions, and remand for further proceedings. All right. Thank you. Thank you. You've reserved five minutes for rebuttal. And we'll hear next from the United States. Thank you, Your Honors. May it please the court. Julia Capusta for the United States. Border searches are reasonable simply because they take place at the border. In the course of conducting a lawful border search of Polito's electronic devices, border agents found evidence that Polito traveled across our border to have sex with a child and transported that child back into our country to continue having sex with her. The search was reasonable by the single fact that Polito's devices entered into our country from the outside. And that single fact allowed the border agents to search the entirety of Polito's electronic device. I mean, look, I think that that is basically what Toussaint says. But still, I mean, that seems extremely expansive and extensive, especially given Riley and the Supreme Court's detailed description of what it thinks that a cell phone includes as far as information goes. And, you know, I just wonder, I know your brief basically says that it doesn't to arrest context. But still, I mean, it does seem a little bit extensive that if you come into the United States, citizen, non-citizen, whatever, that anything can be searched forensically to any extent, your computer, your cell phone, et cetera. Where is the line drawn on this? Is there a line? I don't believe so. There is, Toussaint said that the sovereign's paramount interest in protecting its territorial integrity overcomes any privacy interest. So you may have in his or her electronic device. So your thought is that if you're going to travel outside the borders and then basically you give up all of your rights to privacy, all of your Fourth Amendment rights, et cetera, um, as it pertains to anything, really, I mean, cell phones, computers, whatever, is that, is that a fair statement of your position? Yeah, that's how I read Toussaint, because Toussaint said a search of an electronic device is a search of property. It is no different than a search of a vehicle, is no different than a search of passenger's luggage. Except that the Supreme Court has told us that it is different than a search of a vehicle, a search of luggage, because, um, in Riley, the Supreme Court said that, you know, people keep their entire lives in their cell phones, that it could be more revealing than a search of your home, which has the optimal protection. I mean, that just seems wrong to me. But, you know, I mean, I agree we're bound by it, but I just am wondering your thoughts on that. Well, I do believe there is, there are three categories of searches that the Supreme Court has identified might be unreasonable, and those include truly invasive searches of the person, destructive searches of property, and there's a third category of searches that are conducted in a particularly offensive manner. Okay, but those, those don't have to deal with anything to, I mean, when we're talking about the kinds of searches that are involved here, there are no limits. I do believe in the third category of searches, particularly offensive searches, and Ramsey, when it identified that factor, it cited two cases that are unconstitutional rummaging cases, where border agents seized the entire contents of someone's home. There was no even pretense that they were searching for evidence of criminal activity. They simply seized every single item and introduced every item into evidence. So I think the fear that this extensive power could be used to just sift through entire passengers' phones at random could be limited by that category of unreasonableness. Every search has to be conducted, must be reasonable. The search here was a focused, directed search to find evidence of Toledo's transnational crimes, and in serving its interest of preventing the entry of unwanted travelers at the border, sovereign power includes at least the ability to determine whether a person seeking entry into our country is planning to engage, is engaging in, or has in the past engaged in transnational violations of the law. So that's what my only question so far has been about, wanting to clarify, when Toledo entered the country, he was already under investigation, and so it's fair to say that law enforcement had some concern about him that they were trying to pursue already, correct? Yes, that is correct. So is that not a fact that is distinguishable from what I think the test you're proposing, which is any of us can come through the United States and be subject to this kind of search without any real justification? Yes, I agree. There is limits to reasonableness. It's not, we have not reached the limit in this case. In this case, it was a focused, directed search towards evidence that border agents had that this person had both brought a child into the country and traveled across our border to have sex with that child. And the question, the scope question, I think, it is not, the Supreme Court has never judged reasonableness on the likelihood in each particular search that the evidence revealed will be tied to the specific justifications of that search. Reasonableness is judged at the inception. So I think in determining the scope, this court just needs to decide whether allowing border agents to search electronic devices for more than a month in addition to the seizure of contraband, border agents are interested in deterring the entry of contraband into our border. And that includes determining whether someone plans to bring in the future contraband into our country. Maybe they're coordinating a shipment of contraband into our country. The sovereign's interest also includes protecting our national security and preventing the entry of terrorists and terrorist weapons into our country and allowing border agents to search the messages to determine where has this person traveled to, who is this person communicating with, what are the contents of those communications. Those interests serve the justifications of the border search. And border agents are always allowed to seize evidence of criminal activity that they search when they are conducting a lawful search. How does the government distinguish if the goal is to prevent contraband or illegal activity from happening in the country? How does the government distinguish who to stop and search in that way and how do we make sure it's not done in an arbitrary and discriminatory way? Unfortunately, there is no way to prevent that because there is no limits on who the subjective motivation of the border agents is never at issue. It's whether the search is objectively reasonable. And this court has already said that forensic searches of electronic devices are reasonable without any level of suspicion. But I do believe, again, if a search is conducted in an unreasonable manner, that level of reasonableness always governs and that the border agents do not exceed the limits here when they search. So reasonableness is defined by the three, I guess, factors that you identified earlier? Those are the three factors that the Supreme Court has said governs border searches, yes. And I do believe that a general exploratory search would fall in the same category as the unconstitutional rummaging searches, the Supreme Court said, and Ramsey could cross the line into an unreasonable search at the border. That is not what happened here. What happened here is border agents knew that Pulido, once again, had traveled into our country from the outside. He had brought a child with him. And at the time they had conducted the search, Agent Garcia also knew, she told border agents, that they believed he had a new girlfriend in Mexico. So they could have been concerned that he would be repeating the same crime again. So he also knew that his family had committed violations of immigration laws. So this was a focused search. So let me ask it to you this way then. Let's assume that the exact same search was done on somebody randomly. Would that have violated the rummaging rule that you have suggested limits searches of electronic devices? I believe it would depend on the focus of that search and whether they were searching for contraband, whether they were searching for... But they're just doing a search. They're just doing a border search randomly to see if there's any contraband. Yes. And if in the course of that search, they find evidence of criminal activity, they're entitled to seize it. But I do believe, again, once again, there's always reasonableness here. And another important factor... So there's not really any limit then for rummaging. I mean, I'm just trying to figure out where the line is. I believe that, again, it would depend on the facts of that case. If the border agent... To the United States, there's no reasonable suspicion. He's randomly selected for a contraband search. The same stuff is on his phone as happens. It's basically Mr. Polito, except that they don't know anything about Mr. Polito or the alleged crime. Yes. Because if in the course of conducting a lawful search, and we know that, in fact, that search was lawful, they find evidence of criminal activity, they are entitled to seize that evidence. Right. But how far are they allowed to go to find evidence of alleged criminal activity? Again, because of the government's interest at the border includes protections to its national security, preventing immigration violations, and even evidence of contraband violations, they're allowed to search through the messages. They're allowed to determine... Okay. So it's basically... I'm just trying to establish. It seems like it's illusory, the limitation that you have suggested. I mean, it probably doesn't matter in this case because TwoSet governs. We're bound by it. There are different circumstances. But I mean, just as a practical matter, it doesn't seem like there's much of a limitation at all. Well, I do believe that in the context of border searches, judicial restraint is especially important. Congress and the executive are interested in determining the appropriate balance to be struck between a traveler's privacy interests and the sovereign's interest in protecting its territorial integrity. I mean, I understand that. But it sounds like what we're saying is the appropriate balance is there is no interest in privacy. I mean, that's basically what we have... It seems like what we've said in this circuit. It allows Congress and the executive to create flexible rules to judge and balance these interests. And they're in the better position to determine what level of protection needs to be afforded to travelers at the border. They're in the better position. Again, there is a policy that governs forensic searches of the border, Customs and Border Patrol. It is over 10 pages long, and it governs everything, how long you're allowed to seize an electronic device for. There's no, just to Judge Rosenbaum's point, in your estimation of the government's position, there is no Fourth Amendment limitation on how long a border control agent can spend inside your home. No. And when this court determined that no reasonableness is required to, or no reasonable suspicion is required to search a home at the border, this court said, there are no inspection-free zones in a vessel that crosses into our country from the outside. And the same applies to electronic devices. There are no inspection-free zones in an electronic device. Because as Toussaint told us, a search of an electronic device is a search of property. And one final point is the idea that we would create this new limit to the border search doctrine on the idea that the seizure of child pornography at the border somehow advances the sovereign's interest more than the seizure of other types of evidence. Child pornography is a borderless crime. Child pornography is contraband, yes, but it's also evidence that a person committed child pornography-related offenses. And when border agents seize the child contraband on someone's phone who crosses the border, that child pornography is likely already crossed into our country and accessible by others. So it is actually advancing its purposes when it searches a phone at the border to determine whether that person has child pornography. So this court should not place a new limit and create a new limit to the scope of the border search doctrine based on the idea that allowing border agents to search and seize child pornography at the border somehow advances the interest of the sovereign more so than allowing border agents to search for evidence of border-related crimes, for evidence that a person is about to smuggle drugs into this country. Can I just, before your time runs out, can I ask you to address an entirely different topic? I realize that when we're talking about the Fourth Amendment, this may feel like the flea on the hair of the tail of the dog, but one of the enhancements for Jimenez, the custody and control enhancement. So Jimenez says, look, the crime had been completed, the conspiracy was over before I really had any custody over this young girl. What's your response to that? Because, like, why isn't it analogous, like as we've said in Morel with respect to the persuasion crime? The crime is the persuasion. Whether or not sex follows, doesn't matter. The crime is persuasion. So why isn't the crime here, under this statute, the transportation? And the transportation had been completed. Why is he not right that his control, he only exercised control after the crime had been completed and the conspiracy had ended? Well, I would have two responses. And one is that he was convicted of conspiracy, and it includes all acts in furtherance of the conspiracy. Even after the crime was completed? Even after the transportation, yes, because it was still in furtherance of his goal of the illicit sexual activity between Polito and the victim. And I would also just emphasize that he had also held himself out, even though he was in a different country at the time, he held himself out as a doctor to the victim. When Polito and the victim were engaging in sex in Croatia, he inserted himself into their sex lives. He said, you can have sex at these times when you're on your period, and you can ensure that you won't get pregnant even if you're not using protection. He inserted himself as a father figure. Even before he was housing her in his house, he acted as a father to her. And we believe that falls within the KR custody and control enhancement, because he abused his role as a parental figure, as someone who should have been looking out for his best interests, for her best interests. We believe that the enhancement applies. Okay. If your honors have any further questions, we ask that you from the convictions of Jimenez and Polito and descendants of Jimenez. Thank you. Thank you, counsel. All right, Ms. Good morning, your honors. Judge Abudo, I'd like to address some of your concerns with respect to Mr. Polito being under investigation for certain crimes. I think what's significant here in comparison to a lot of other cases that are in this arena is that we're dealing with wholly past crimes of what we're seeking to suppress. I understand the government has some questions about immigration that I don't think are relevant to these conversations that we seek to have suppressed, which the courts, many courts have not allowed the border search exception specifically to be used for general investigation purposes, which is exactly what happened here. I think under the government's the border search exception can be used as a complete workaround to the Fourth Amendment. So take, for example, you have the FBI investigating a suspected enticement crime that they think happened in 2020. They don't get a warrant. Perhaps they don't have probable cause. So they reach out to Border Patrol and they say, I'd like you to get this person's devices, copy them, send them to us for a forensic search. And then, you know, let's say they don't find evidence of that enticement, but now they have your entire digital life. They can look at your medical records. They can look at attorney-client information. They can spend however long they want under the government's view looking for evidence of any crime, regardless of the fact that it's And there is plenty of Fourth Amendment law saying when you're dealing with these exceptions to the warrant requirement, you have to tie the scope of your search to the justification for the search. And that would be the border search exception. So at some point, it stops being a border search and is just a general investigative search, which is what happened here. I think just to the question that Judge Rosenbaum asked you during your opening, you say at some point, help us with that, discerning that point. Yeah, I think when you're looking at stale messages, where you're doing more than a cursory glance to see if they are related to the border search. So here they, you know, could perhaps glance at the messages, but they are not related to their interests at the border search. They're related to general investigation purposes. And so they can't hold that evidence, take notes on it, insert it into their reports. Perhaps they can get a warrant to acquire that evidence. And I think that's exactly what— So it's the idea that, like, if you're searching the phone for interests that you say sort of attach at the border, let's say contraband, and you're—so you're flipping through the messages or whatever this looks like, and you see one, and you're like, oh, wow, that's incriminating, but it has nothing to do with contraband. At that point, you need to go get a warrant? I think that's different from the question posed here because that did not happen here. This was an entirely circumstantial case. I'm just trying to figure out how it works, not necessarily even in this case, but how the principle really from either side would work. I think that this is something that law enforcement has dealt with for decades as far as looking at paper documents. So law enforcement frequently will execute warrants for paper documents and has to make the assessment of whether those fall within the scope of a warrant or not. So I think that this is something that law enforcement does and has done for a while. That being said, I do think that there would be an easy line to draw saying they can look for contraband. When they're looking for contraband and they find something else, that's the trick. Yeah, and there might be some work with plain view, but I think it's particularly difficult in the message context, which also raises the concerns under the First Amendment that there are privacy interests in those messages. And that was something that the Supreme Court expressly declined to address in Ramsey because the nature of the privacy interest is just different than what you're dealing with in any of the real border search cases that the Supreme Court has dealt with. They all predate Riley. They all deal with intercepting contraband. They don't deal with looking through a person's messages, a person's First Amendment material for whatever they want. Thank you, Your Honors. Thank you, Counsel. Thank you. All right, the next case is United.